**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>National Bank of Anguilla (Private Banking & Trust) Ltd.,<br><br>Debtor. | Chapter 15<br><br>Case No.: 15-_____ (\_\_\_\_) |

**DECLARATION OF WILLIAM TACON IN SUPPORT OF**
**(I) THE VERIFIED PETITION FOR RECOGNITION OF FOREIGN**
**PROCEEDING AND (II) MOTION IN SUPPORT OF VERIFIED PETITION FOR**
**RECOGNITION OF FOREIGN PROCEEDING AND FOR RELATED RELIEF**

I, William Tacon, declare as follows:

1. I am an individual over 21 years of age and am competent to testify and to provide this Declaration in support of the *Verified Petition for Recognition of Foreign Proceeding Under Chapter 15* (the "Verified Petition") and the *Motion in Support of the Verified Petition for Recognition of Foreign Proceeding and for Related Relief* (the "Motion").

2. I have personal knowledge of the statements set forth in this Declaration or such statements are based upon my review of the books and records of the National Bank of Anguilla (Private Banking & Trust) Ltd. ("PBT"), which books and records were kept in the regular course of PBT's business and relied upon by PBT's employees in conducting PBT's banking business. Those books and records also included data compiled in the ordinary course of PBT's banking business.

3. I am a Chartered Accountant and a Consultant with FTI Consulting (BVI) Limited based in Tortola, British Virgin Islands in its Caribbean Corporate Restructuring and Finance Department.

4. I have over 35 years of experience in restructuring and insolvency, including approximately 12 years in the Caribbean area. Previously, I was an Insolvency and Restructuring Partner at Ernst & Young LLP in the United Kingdom until September 2004, then Managing Partner of Zolfo Cooper (BVI) Limited from 2004 until 2012 and relocated back to England in July 2012. I have held appointments as liquidator of many companies in the British Virgin Islands and throughout the Caribbean, including several other cases in Anguilla. I also have significant experience in cross-border insolvency matters involving parties in the U.S., U.K., France, Switzerland, Russia, the Commonwealth of Independent States, Hong Kong, People's Republic of China, and Singapore. Until recently, I was a liquidator of two of the largest British Virgin Islands registered feeder funds into Bernard L. Madoff Investment Securities LLC.

A. **PBT Generally**

5. PBT is a commercial bank incorporated and licensed in Anguilla.

6. PBT's headquarters are located at the Conrad W Fleming Corporate Building on St. Mary's Road in The Valley, Anguilla.

7. The National Bank of Anguilla Ltd. ("NBA") is the sole shareholder of PBT. NBA is incorporated pursuant to the laws of Anguilla.

8. PBT does not have any employees. When input is required, it is provided by employees of National Commercial Bank of Anguilla Ltd ("NCBA"), the successor to NBA (as discussed below).

B. **My Appointment as Administrator and Liquidator of PBT**

9. PBT was regulated by the Financial Services Commission in Anguilla ("FSC").

10. PBT failed to provide the FSC by 30 April 2015 with audited accounts of its banking business for the financial year ended 31 October 2014, thereby violating section 30(2) of Trust Companies and Offshore Banking Act, R.S.A. c. T60 ("TCOBA").

11. Therefore, upon the application of the FSC and by an Order dated February 22, 2016 (the "First Administration Order"),[1] the Eastern Caribbean Supreme Court in the High Court of Justice Anguilla Circuit (the "High Court") placed the operations of PBT and another offshore bank, the Caribbean Commercial Investment Bank Ltd. ("CCIB" and together with PBT, the "Offshore Banks") under administration pursuant to section 31(2)(b) of the Financial Services Commission Act (with respect to PBT, the "Anguillian Proceeding").

12. By the First Administration Order, the High Court appointed me as the Administrator of the Offshore Banks (the "Administrator"). *See* First Administration Order at ¶ 2.

13. As the court-appointed Administrator of PBT, I have complete control of the management of PBT pursuant to section 31(2)(b) of the Financial Services Commission Act, R.S.A. c. F28 (the "FSC Act"). *See* First Administration Order at ¶ 3.

14. The High Court specifically authorized me, as an officer of the High Court, "to act in Anguilla or any foreign jurisdiction where he believes assets and property of the Offshore Banks may be Situate . . . [to] commence [or] continue . . . without further Order of this Honorable Court any proceeding or action . . . in a foreign jurisdiction for the purpose of fulfilling his duties and obligations under this Order." *See* First Administration Order at ¶ 9.

15. The High Court further authorized me "to seek the assistance of any Court of a foreign jurisdiction in the carrying out of the provisions of this Order . . ., including without

---

[1] A true and correct copy of the First Administration Order is attached as Exhibit A to the Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure.

limitation, an order of examination of persons believed to be knowledgeable of the affairs, assets and property of the Offshore Banks and to assist the Administrator in the recovery of the assets and property of the Offshore Banks." *See* First Administration Order at ¶ 9.

16. The First Administration Order also authorized me, as Administrator, to "sell, charge or otherwise dispose of the assets of the Offshore Banks." *See* First Administration Order at ¶ 13(c).

17. The First Administration Order requires me to report to the High Court regarding the winding up of the Offshore Banks or of any part of the business of the Offshore Banks. *See* First Administration Order at ¶ 5(c).

18. In addition, the High Court entered an Order dated May 19, 2016 (the "<u>Second Administration Order</u>").[2] The Second Administration Order expressly conferred upon me the powers of a liquidator under the Companies Act, as permitted by section 31(3) of the FSC Act. *See* Second Administration Order at ¶ 1.

**C.    My Notices to PBT's Creditors**

19. I provided notice, by e mail, of the Anguillian Proceeding and my appointment as Administrator to all known PBT depositors on April 13, 2016.

20. In addition, on February 22, 2016, the FSC issued a press release on its website, providing, in relevant part, as follows:

> *Administrator appointed for National Bank of Anguilla (Private Banking & Trust LTD and Caribbean Commercial Investment Bank Ltd.*
>
> The High Court of Justice Anguilla Circuit has ordered the appointment of Mr. William Tacon, Chartered Accountant, of FTI Consulting, Tortola, British Virgin Islands as Administrator of the National Bank of Anguilla

---

[2] A true and correct copy of the Second Administration Order is attached as Exhibit B to the Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure.

> (Private Banking & Trust) Ltd (NBAPBT) and the Caribbean Commercial Investment Bank Ltd (CCIB).
>
> The Order was made on Monday, 22 February 2016 following the application of the Financial Services Commission (FSC) to the Eastern Caribbean Supreme Court for the appointment of an Administrator to manage the business of NBAPBT and CCIB. The FSC sought the Order to meet its regulatory obligations under the Trust Companies and Offshore Banking Act, R.S.A. c.T60 (TCOBA) and the Financial Services Commission Act, R.S.A. c.F28. . . .
>
> Mr Tacon, as Administrator, has therefore taken control of all operations of NBAPBT and CCIB and will manage their on-going business. He is expected to work closely with the Eastern Caribbean Central Bank (ECCB) pre-resolution and in the eventual resolution of the parent banks. The ECCB fully supports the appointment of Mr. Tacon as Administrator to manage the business of NBAPBT and CCIB. . . .

*See* http://www.fsc.org.ai/story.php?id=4&ID=6704.

21. I also provided written updates to all known depositors on April 19 and 27, 2016, and May 6, 2016, to update them regarding my efforts as Administrator.

22. I am not aware of any significant or material creditors of PBT other than its depositors.

**D.    PBT's Transfer of Approximately $175 Million to NBA**

23. Between August 12, 2013, and April 22, 2016, the affairs of NBA were subject to the control of the Eastern Caribbean Central Bank (the "ECCB"), which was the regulator of NBA, through a process of conservatorship pursuant to powers conferred on the ECCB by the Eastern Caribbean Central Bank Agreement Act.

24. On April 22, 2016, the ECCB appointed a receiver to NBA. At 4:00 p.m. on April 22, 2016, NBA ceased banking operations in Anguilla. According to a press release issued by the ECCB, NBA's banking operations were transferred on April 22, 2016, to a newly established bank, NCBA, which apparently is wholly-owned by the Government of Anguilla.

25. Between August 12, 2013 and March 24, 2016 (the "Relevant Period"), PBT's affairs were conducted in accordance with instructions given by, and under the management control of, individuals appointed by the ECCB as conservators of NBA. Those individuals were Messrs. Martin Dinning, Hudson Carr, and Shawn Williams (collectively, the "Conservator Directors"). All of the Conservator Directors were based in Anguilla during their periods of office, although they were not residents or citizens of Anguilla. All Conservator Directors appear to have operated under the close control or supervision of the ECCB.

26. On or about August 15, 2013, the ECCB or Mr. Dinning, as Conservator Director acting on behalf of NBA, dismissed the appointed directors of PBT. From August 15, 2013, until February 22, 2016, PBT had no *de jure* directors and therefore acted solely in accordance with the instructions of, and under the management control of, the Conservator Directors acting from time to time.

27. From February 22, 2016, until March 24, 2016, in accordance with the terms of my appointment as Administrator, I sub-contracted the management of the day-today operations of PBT to NBA (by and through Mr. Williams, as Conservator Director of NBA).

28. Throughout the Relevant Period, based upon my experience as a Chartered Accountant and my review of PBT's financial statements provided to me by the FSC and those responsible for managing the business of PBT, I believe that PBT was insolvent on a balance sheet test. It appears that PBT also may have been unable to pay its debts as they fell due, at least during the latter part of the Relevant Period and thereafter. Based upon my review of financial statements for NBA and my understanding of its financial position, I also believe that NBA was illiquid, dependent upon PBT for its liquidity (at least in part), and unable to settle the

large amount NBA owed to PBT. Based on such analysis, and my experience, I believe that NBA was insolvent, at least during the latter part of the Relevant Period.

29. On April 22, 2016, the ECCB appointed a receiver to NBA. At 4:00 p.m. on April 22, 2016, NBA ceased banking operations in Anguilla. According to a press release issued by the ECCB, NBA's banking operations were transferred on April 22, 2016 at 4:00 p.m., to a newly established bank, the National Commercial Bank of Anguilla Ltd, which apparently is wholly-owned by the Government of Anguilla. *See* http://www.Anguillianews.com/enews/index.php/permalink/5489.html.

30. Notwithstanding the insolvency of NBA during the Relevant Period, the Conservator Directors (acting on behalf of PBT) procured or permitted the payment to NBA of (i) all monies received by PBT from depositors denominated in U.S. Dollars and (ii) the proceeds of all assets of PBT realized or collected during the Relevant Period, also denominated in U.S. Dollars (together, the "Funds").

31. I believe the Funds were deposited into a bank account in the U.S. at Bank of America and that a portion of such funds may still remain in such account.

32. At the close of business on April 25, 2016, at my direction, PBT ceased accepting new deposits as I determined that trading should cease immediately. Between the time of my appointment as Administrator and the date upon which I caused PBT to cease accepting deposits, PBT was accepting deposits.

33. The total amount of the Funds paid to or collected by NBA during the Relevant Period totaled US$174,959,675.75.

34. None of NBA, NCBA, the ECCB, and the Conservator Directors to whom I have reached out for information and explanations relating to the transfer of the Funds to NBA (while

it was insolvent) has been forthcoming with answers. In addition, despite repeated requests, I have received no indication that NBA or NCBA will repay any of the Funds. My enquiries indicate that no provision has been made for NCBA to make repayment and NBA is in receivership and clearly recognized as being insolvent.

35. Based on my investigations, including discussions with representatives of NBA and NCBA, I believe that all of the Funds were received into a bank account in the United States (and in this District) and there is a strong possibility that some money will still be held in that account. I further believe that such funds are held in constructive trust for PBT's benefit because PBT did not receive reasonably equivalent value in exchange for the transfer of the Funds and PBT was insolvent (or was rendered insolvent) by the transfer of the Funds to NBA. I have commenced legal proceedings in Anguilla against NCBA for the return of this money and sought leave of the Court to commence an identical proceeding against NBA. (Under the terms of the Banking Act 2015, such consent is required before proceedings can commence against NBA).

### E.     The Chapter 15 Case

36. By filing the Verified Petition and the Motion, I seek the assistance of the U.S. courts in my efforts to locate and recover PBT's assets in furtherance of my duties as Administrator of PBT to liquidate PBT's assets and repay its creditors according to their priorities. I anticipate that calling for claims and subsequently admitting them to rank for dividend will take place in Anguilla as part of the Anguilla Proceeding and my liquidation of PBT's assets.

37. I have reviewed Exhibits A and B to the *Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of*

*the Federal Rules of Bankruptcy Procedure.* The exhibits are true and correct copies of the original documents.

### F.     The Retainer

38.    Prior to filing the Verified Petition, I caused a retainer in the amount of Nine Thousand Dollars ($9,000) to be wire transferred to an account in the name of Reed Smith LLP in New York, New York. Reed Smith LLP holds such funds as a security retainer.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: May 26, 2016                    By: _____
                                                William Tacon, as Administrator of
                                                National Bank of Anguilla (Private Banking
                                                & Trust) Ltd.