**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| National Bank of Anguilla (Private Banking & Trust) Ltd., | Case No.:  15-_____(____) |
| Debtor. | |

**DECLARATION OF EUSTELLA FONTAINE IN SUPPORT OF**
**(I) THE VERIFIED PETITION FOR RECOGNITION OF FOREIGN**
**PROCEEDING AND (II) MOTION IN SUPPORT OF VERIFIED PETITION FOR**
**RECOGNITION OF FOREIGN PROCEEDING AND FOR RELATED RELIEF**

I, Eustella Fontaine, declare as follows:

1.      I am an individual over 21 years of age and am competent to testify and to provide this Declaration in support of the *Verified Petition for Recognition of Foreign Proceeding Under Chapter 15* (the "Verified Petition") and the *Motion in Support of the Verified Petition for Recognition of Foreign Proceeding and for Related Relief* (the "Motion").

2.      I earned an LL.B (Hons.) in 2001 from the University of Sheffield.  Thereafter, I earned an LL.M in International Human Rights Law from the University of Nottingham.  I am a member of Gray's Inn and was called to the Bar of England and Wales in 2003 (non-practicing).  I am a Barrister and a Solicitor.

3.      I was admitted to the bar of Anguilla in 2004 and have practiced in Anguilla continuously since that time.  I have represented parties in cases before the High Court of Anguilla, the Court of Appeal of the Eastern Caribbean Supreme Court, and the Judicial Committee of the Privy Council.

4.      I am the founder of Fontaine & Associates, a law firm in Anguilla.

5.      Based on the foregoing, I am familiar with Anguillian law.

6.      Anguilla is a British Overseas Territory (a dependent territory) of the United Kingdom.  Although Anguilla's legislature and courts are independent from the United Kingdom, Anguilla's final court of appeals is the Judicial Committee of the Privy Council in London.  Thus, the common and statutory law of Anguilla is based heavily on the laws of England.

7.      The National Bank of Anguilla (Private Banking & Trust) Ltd. ("PBT") is a commercial bank incorporated and licensed in Anguilla.

8.      NBA is the sole shareholder of PBT.  On August 12, 2013, the Eastern Caribbean Central Bank (the "ECCB") placed NBA into a conservatorship pursuant to powers conferred on the ECCB by the Eastern Caribbean Central Bank Agreement (as amended, the "ECCB Agreement").[1]  See *Gazette* Vol 40, No. 11.

9.      On April 22, 2016, the ECCB appointed a receiver for NBA pursuant to section 137 of the Banking Act, No. 6 of 2015.  At 4:00 p.m. on April 22, 2016, NBA ceased banking operations in Anguilla.  According to a press release issued by the ECCB, NBA's banking operations were transferred at 4:00 p.m. on April 22, 2016, to a newly established bank, the National Commercial Bank of Anguilla Ltd., which apparently is wholly-owned by the Government of Anguilla.  *See*

http://www.Anguillianews.com/enews/index.php/permalink/5489.html.

---

[1] The Governments of Anguilla, Antigua and Barbuda, the Commonwealth of Dominica, Grenada, Montserrat, Saint Christopher and Nevis, Saint Lucia, and Saint Vincent and the Grenadines entered into the ECCB Agreement. *See* R.S.A. c E5.  Part II.A of the ECCB Agreement gives the ECCB the emergency power to take control of a financial institution when, among other reasons, the ECCB is of the opinion that "(a) that the interests of depositors or creditors of a financial institution are threatened," "(b) that a financial institution is likely to become unable to meet its obligations or is about to suspend or has suspended payment to its creditors or depositors;" or "(c) that a financial institution is not maintaining high standards of financial probity or sound business practices[.]"

10.     Anguillian law requires that all banks operating from within Anguilla and conducting banking business in currencies other than Eastern Caribbean Dollars with persons or entities who are not citizens of or resident in Anguilla shall apply for and obtain an "Offshore Banking License" to conduct such business.  PBT was established to provide offshore banking and trust services to clients worldwide and became operational on April 1, 2005.  See http://nbaoffshore.ai/faq.php.  PBT was regulated by the Financial Services Commission in Anguilla (the "FSC").

11.     Section 31, entitled "Protection Order," of the Financial Services Commission Act, R.S.A. c. F28 (the "FSC Act") provides, in relevant part, as follows:

> (2) On an application made under subsection (1), the Court may make such order as it considers necessary *to protect or preserve the business or property of the licensee, or the interests of its customers, creditors or the public* including—
>
>> (a) an order preventing the licensee or any other person from transferring, disposing of or otherwise dealing with property belonging to him or in his custody or control;
>>
>> (b) an *order appointing an administrator* to take over and manage the financial services business then carried on by the licensee or carried on by him immediately before the revocation or suspension of the licence, as the case may be;
>>
>> (c) in the case of a company, an order that the licensee be wound up by the Court or subject to the supervision of the Court under the Companies Act; and
>>
>> (d) an order granting the Commission a search warrant.
>
> (3) Without limiting paragraph (2)(b), *an order made under that paragraph shall specify the powers of an administrator, which may include the powers of* a licensee under this Act or of *a liquidator under the Companies Act* and may—
>
>> (a) require an administrator to provide security to the satisfaction of the Court;
>>
>> (b) fix and provide for the remuneration of the administrator; [and]

- 3 -

(c) require such persons as it considers necessary to appear before the Court for the purposes of giving information or producing records concerning the licensee or the business carried on by the licensee.

(4) An order made under paragraph (2)(b) shall make provision for reports to be submitted by the administrator to the Court and to the Commission.

*See* FSC Act, R.S.A. c. F28 at § 31(2)-(4) (emphasis added).

12.     Upon the application of the FSC, and by an Order dated February 22, 2016 (the "First Administration Order"), the Eastern Caribbean Supreme Court in the High Court of Justice Anguilla Circuit (the "High Court") placed the operations of PBT under administration pursuant to section 31(2)(b) of the FSC Act (the "Anguillian Proceeding"). *See* First Administration Order at ¶ 1.[2]

13.     By the First Administration Order, the High Court appointed William Tacon of FTI Consulting as the Administrator of PBT (the "Administrator"). *See* First Administration Order at ¶ 2.

14.     As the court-appointed Administrator of PBT, Mr. Tacon has complete control of the management of PBT pursuant to section 31(2)(b) of the FSC Act. *See* First Administration Order at ¶ 3.

15.     The High Court, however, supervises, and has ultimate control of, the administration of PBT.

16.     In addition, the High Court entered an Order dated May 19, 2016 (the "Second Administration Order"). The Second Administration Order expressly conferred upon the

---

[2] A true and correct copy of the First Administration Order is attached as Exhibit A to the *Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure*.

Administrator the powers of a liquidator under the Companies Act, as permitted by section 31(3)

of the FSC Act. *See* Second Administration Order at ¶ 1.[3]

17.     The Companies Act, R.S.A. c C65, at § 222(1), provides, in part, as follows:

Powers of liquidator

222. (1) A liquidator may—

> (a) retain attorneys-at-law, accountants, engineers, appraisers and other professional advisers;
>
> (b) bring, defend or take part in any civil, criminal or administrative action or proceeding in the name and on behalf of the company;
>
> (c) carry on the business of the company as required for an orderly liquidation;
>
> (d) sell by public auction or private sale any property of the company;
>
> (e) do all acts and execute any documents in the name and on behalf of the company;
>
> (f) borrow money on the security of the property of the company;
>
> (g) settle or compromise any claims by or against the company;
>
> (h) make financial provision in respect of the custody of the documents and records of the company after its dissolution; and
>
> (i) do all other things necessary for the liquidation of the company and the distribution of its property.

*Id.*

18.     Therefore, the Administrator, with the powers of a liquidator, has the authority to

take any action necessary to liquidate PBT's assets.

19.     The High Court supervises, and has ultimate control of, the liquidation of PBT.

---

[3] A true and correct copy of the Second Administration Order is attached as Exhibit B to the *Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure*.

20.     The Administrator will be responsible for administering claims in the liquidation of PBT.  *See* Companies Act, R.S.A. c C65, at § 221(b)(iii) (liquidator must give notice "requiring any person having a claim against the company, whether liquidated, unliquidated, future or contingent, to present particulars of the claim in writing to the liquidator not later than 2 months after the first publication of the notice").

21.     Anguillian law is heavily based on English law.  It is a general principle that valid pre-existing secured rights are recognised in a liquidation and that secured creditors (*i.e.*, creditors with a "charge" on assets) will therefore have priority ahead of unsecured creditors with respect to their collateral.  The encumbered assets would be regarded as available to the secured creditors in priority to other creditors, with any surplus being realised for the benefit of the general estate.  Unsecured creditors are typically paid *pari passu*.

22.     To the extent that PBT has U.S. creditors, they would be treated fairly in the Anguillian Proceeding and the liquidation of PBT.  No distinction would be drawn for the purpose of PBT's liquidation based on the nationality or residence of the creditor.  For example, Anguillian creditors would not receive any priority simply because they are residents of Anguilla.  Equally, U.S. creditors would not be treated less favourably than creditors from any other jurisdiction.  Thus, there would be no different treatment of U.S. and Anguillian depositors based on their residency or nationality.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:  May 25, 2016           By: _____

Eustella Fontaine, Barrister/Solicitor
Fontaine & Associates